IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARLA R. McGOWEN**, | ) | |
| | ) | No.:_____ |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Judge:_____ |
| | ) | |
| **COUNTRYWIDE HOME LOANS, INC.**, | ) | |
| **MICHAEL B. ECKHART**, **PETER ZAFT**, | ) | Magistrate Judge:_____ |
| and **DALE McKENZIE**, | ) | |
| | ) | |
| *Defendants*. | ) | **JURY DEMAND** |

_____

# C O M P L A I N T
_____

The plaintiff, **MARLA R. McGOWEN**, formerly known as **MARLA R. SIMS**, sues the Defendants, **COUNTRYWIDE HOME LOANS, INC., MICHAEL B. ECKHART**, **PETER D. ZAFT**, and **DALE McKENZIE**, for damages, and says:

### Parties and Allegations Establishing Venue

1. Plaintiff is a female individual resident of Rutherford County, Tennessee, which is within the Middle District of Tennessee.

2. Defendant **COUNTRYWIDE HOME LOANS, INC.** (hereinafter, "Countrywide"), is a New York for-profit corporation authorized to do business within Tennessee and doing business, among other places, at 3011 Armory Drive, Suite 120, Nashville, Davidson County, Tennessee (hereinafter, "the Armory Drive facility"), which is within the Middle District of Tennessee.

3. Defendant **MICHAEL B. ECKHART** (hereinafter referred to as "Eckhart") is a male

individual who, at all times pertinent hereto, was employed by Countrywide in a position entitled "home loan consultant" at the Armory Drive facility, and who resides in Williamson County, Tennessee, which is within the Middle District of Tennessee.

4. Defendant **PETER D. ZAFT** (hereinafter referred to as "Zaft") is a male individual who, at all times pertinent hereto, was employed by Countrywide in a position entitled "home loan consultant" at the Armory Drive facility, and who resides in Williamson County, Tennessee, which is within the Middle District of Tennessee.

5. Defendant **DALE McKENZIE** (hereinafter referred to as "McKenzie") is a female individual who, at all times pertinent hereto, was employed by Countrywide as the manager of the Armory Drive facility, and who resides in Wilson County, Tennessee, which is within the Middle District of Tennessee.

6. All of the events or omissions giving rise to the claims asserted herein occurred within Davidson County, Tennessee, which is within the Middle District of Tennessee.

### Jurisdictional Statement

7. Count I , below, is a civil action for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Accordingly, Count I of this action presents a federal question over which this court has jurisdiction pursuant to 28 U.S.C. §1331. Count I also is a civil action arising under an Act of Congress regulating commerce, over which this court has jurisdiction pursuant to 28 U.S.C. § 1337.

8. Counts II through VI, below, are claims for damages brought under the laws of the State of Tennessee that are so related to the federal-question claim in this action over which this Court has original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution. Accordingly, Counts II through VI of this action fall within this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

**Statement of the Claim**

COUNT I: TITLE VII CLAIM AGAINST COUNTRYWIDE FOR SEXUAL HARASSMENT

9. This count is an action for damages against Countrywide under Title VII of the Civil Rights Act of 1964, as amended (hereinafter referred to as "Title VII"), 42 U.S.C. § 2000e, *et seq.*, for the sexual harassment of Plaintiff, its employee, by Butler and Zaft, her supervisors, during the course of their duties, and for the retaliatory termination of Plaintiff by Countrywide for her exercise of her Title VII rights.

10. At all times pertinent hereto, Countrywide engaged in an industry affecting trade, traffic, commerce, transportation, transmission, or communication among the several States, to wit: the nationwide financing of real property purchases by others.

11. At all times pertinent hereto, Countrywide had fifteen or more employees for each working day in each of twenty or more calendar weeks in the then current calendar year.

12. Plaintiff was employed by Countrywide on February 5, 2001, and was initially assigned to work at a Countrywide location other than the Armory Drive facility.

13. On June 25, 2006, Plaintiff was transferred by Countrywide to its Armory Drive facility in Nashville, Tennessee, to work in a position entitled "production assistant" under the direct supervision of Zaft.

14. On her first day of employment at the Armory Drive facility, or within several days thereafter, Plaintiff was directed by Zaft to join him and Eckhart at a local restaurant and

bar for what Zaft referred to as a "builder's meeting," intentionally and falsely leading Plaintiff to believe that the three of them would be meeting with one or more persons connected with the local building industry to discuss business. This "builder's meeting," however, was simply a ruse used by Zaft and Eckhart to get Plaintiff into an alcohol-charged social encounter with just the two of them that was designed to begin to pressure Plaintiff into engaging in sexual activity.

15. For approximately two years thereafter, Plaintiff continuously was subjected to a sexually hostile environment at Countrywide involving all manner of unwanted sexual overtures and behaviors directed toward her by Eckhart and Zaft, including sexual jokes, sexual comments, sexual innuendos, overt sexual acts, and other sexual behaviors fueled by alcohol and illegal drugs provided, in her case, primarily by Eckhart.

16. After a period of time as Zaft's production assistant, Plaintiff was transferred, with a resulting increase in earnings, to a production assistant position with Eckhart as her immediate supervisor. Thereafter, the sexually hostile environment described above intensified, and Plaintiff was coerced, by implicit threats to her employment security, into participating in Eckhart's bacchanalian revelries, both during and outside of work hours, several times per week until approximately March, 2008, when Plaintiff made it clear to Eckhart that she no longer could tolerate the unwanted, sexually hostile environment in which she worked.

17. In April, 2008, Plaintiff complained to Eckhart's supervisor, a female Countrywide employee named Dale McKenzie, about an incident related to the sexually hostile environment at Countrywide, specifically identifying Eckhart as the source of sexual harassment.

18. From and after approximately March, 2008, first in retaliation for Plaintiff's rejection of and opposition to Eckhart's unwanted sexual advances and other behaviors directed toward Plaintiff, and later in retaliation for Plaintiff's complaining to McKenzie as set forth above, Eckhart increased his work demands upon Plaintiff and acted with hostility toward her, behaving as if he resented her withdrawal from and opposition to his advances as well as her complaint to McKenzie, and dropping not-too-subtle hints to her that she should transfer elsewhere (with a likely reduction in her compensation) if she didn't like his new, unwarranted rigidity as a supervisor.

19. McKenzie failed to discipline Eckhart or otherwise to take action to correct the sexually hostile environment at Countrywide, primarily because Eckhart was an extremely successful income producer for Countrywide and, consequently, for McKenzie — given the commission-heavy nature of her compensation agreement with Countrywide.

20. The foregoing pattern of sexual harassment created a persistent, intimidating, hostile, and offensive working environment for Plaintiff, and had the effect of unreasonably interfering with her work performance by causing her severe emotional stress, which, in turn, caused her to begin to miss work in an attempt to avoid contact with Eckhart.

21. Prior to working directly under Eckhart, Plaintiff had witnessed hostility and adverse employment effects on others whose inappropriate relationships with Eckhart had soured, causing her to fear for her own employment were she not to go along with and participate in the illicit, sexually charged environment created largely by Eckhart at Countrywide, until, as aforesaid, she simply could no longer tolerate the extreme emotional stress that she had suffered as a consequence of the environment.

22. Prior to Plaintiff's transferring to the Armory Drive facility, complaints of sexual

harassment by Eckhart had been made to his superiors, yet Countrywide failed and refused to take any action to correct his behavior, primarily because Eckhart was an extremely successful income producer for Countrywide.

23. As a direct, proximate result of Countrywide's failure to take corrective action with respect to the sexually hostile environment at the Armory Drive location, generally, and with respect to the unwanted, sexually hostile behaviors of Eckhart, specifically, Plaintiff ultimately fled the work environment at the Armory Drive location by securing a transfer to work as a production assistant at another Countrywide location, effective on June 10, 2008.

24. Because her income as a production assistant was based in large part on the income of the home loan consultant whom she assisted, and because Eckhart's income was markedly higher that that of the home loan consultant to whom Plaintiff transferred to assist, Plaintiff's being forced to flee the sexually hostile environment for work at the new location amounted to an adverse employment decision directed toward her — a constructive demotion — as a consequence of and in retaliation for the sexual harassment and her reporting of it.

25. On June 25, 2008, Plaintiff filed a formal charge of unlawful employment practices against Countrywide with the United States Equal Employment Opportunity Commission (EEOC) complaining of the conditions and behaviors set forth above. Countrywide was given a copy of Plaintiff's EEOC complaint by the EEOC, and Countrywide and Eckhart otherwise were well aware that Plaintiff had filed the complaint.

26. On December 17, 2008, Plaintiff received a NOTICE OF RIGHT TO SUE from the EEOC.

27. Shortly thereafter, on December 29, 2008, in retaliation for Plaintiff's pursuit of Plaintiff's complaint with the EEOC, Countrywide terminated Plaintiff's employment, effective February 6, 2009.

28. Prior to the effective date of Plaintiff's termination, and again in retaliation for Plaintiff's pursuit of Plaintiff's complaint with the EEOC, Countrywide denied Plaintiff an available opportunity to retain her employment and completed the act of terminating her employment — even as Countrywide's business and need for production assistants in the Middle Tennessee area was increasing.

29. As a direct, proximate result of the sexually hostile work environment, the tangible adverse employment actions, and the retaliation against her as alleged above, Plaintiff has suffered and will continue to suffer extreme mental anguish and embarrassment and medical expenses for the treatment thereof, as well as lost wages and other benefits of employment, past, present, and future.

### COUNT II: SUPPLEMENTAL STATE CLAIM AGAINST COUNTRYWIDE FOR DISCRIMINATORY PRACTICES IN VIOLATION OF TENNESSEE'S HUMAN RIGHTS ACT

30. This count is an action for damages against Countrywide under the Tennessee Human Rights Act (THRA), § 4-21-101, *et seq.*, *Tennessee Code Annotated*, for the sexual harassment of Plaintiff, its employee, by Butler and Zaft, her supervisors, during the course of their duties, and for Countrywide's retaliation against Plaintiff for her having opposed such harassment and for her having made a charge and filed a complaint against Countrywide for such harassment.

31. Plaintiff incorporates by reference the allegations of paragraphs 11 through 28, above.

32. The aforesaid actions of Countrywide constitute discriminatory practices in violation of

*McGowen v. Countrywide Home Loans, Inc., et al.*, Complaint, Page 7 of 11

Case 3:09-cv-00226   Document 1   Filed 03/06/09   Page 7 of 11 PageID #: 7

§ 4-21-301(1) and § 4-21-401(a)(1), *Tennessee Code Annotated*.

33. As a direct, proximate result of the aforesaid discriminatory practices, Plaintiff has suffered and will continue to suffer extreme mental anguish and embarrassment and medical expenses for the treatment thereof, as well as lost wages and other benefits of employment, past, present, and future.

COUNT III: SUPPLEMENTAL STATE CLAIM AGAINST ECKHART
FOR DISCRIMINATORY PRACTICES (RETALIATION) IN VIOLATION OF
TENNESSEE'S HUMAN RIGHTS ACT

34. This count is an action for damages against Eckhart under the Tennessee Human Rights Act (THRA), § 4-21-101, *et seq.*, *Tennessee Code Annotated*, for retaliation against Plaintiff for her having opposed such harassment and for her having made a charge and filed a complaint against Countrywide for such harassment.

35. Plaintiff incorporates by reference the allegations of paragraphs 11 through 28, above.

36. The aforesaid actions of Eckhart constitute discriminatory practices in violation of § 4-21-301(1) and § 4-21-401(a)(1), *Tennessee Code Annotated*.

37. As a direct, proximate result of the aforesaid discriminatory practices, Plaintiff has suffered and will continue to suffer extreme mental anguish and embarrassment and medical expenses for the treatment thereof, as well as lost wages and other benefits of employment, past, present, and future.

COUNT IV: SUPPLEMENTAL STATE CLAIM AGAINST ECKHART AND ZAFT FOR
DISCRIMINATORY PRACTICES (AIDING AND ABETTING)
IN VIOLATION OF TENNESSEE'S HUMAN RIGHTS ACT

38. This count is an action for damages against Eckhart and Zaft under the Tennessee Human Rights Act (THRA), § 4-21-101, *et seq.*, *Tennessee Code Annotated*, for aiding,

abetting, and inciting, each with respect to the other, sexual harassment against Plaintiff.

39. Plaintiff incorporates by reference the allegations of paragraphs 11 through 28, above.

40. Zaft aided, abetted, and incited the aforesaid unwanted, sexually hostile and discriminatory actions of Eckhart by participating and conspiring with Eckhart in his unwanted sexually discriminatory behaviors directed toward Plaintiff as aforesaid, and Eckhart aided, abetted, and incited the aforesaid unwanted, sexually hostile and discriminatory actions of Zaft by participating and conspiring with Zaft in his unwanted sexually discriminatory behaviors directed toward Plaintiff as aforesaid. Such aiding, abetting, and inciting constitute discriminatory practices in violation of § 4-21-301(2), *Tennessee Code Annotated*.

41. As a direct, proximate result of the aforesaid discriminatory practices, Plaintiff has suffered and will continue to suffer extreme mental anguish and embarrassment and medical expenses for the treatment thereof, as well as lost wages and other benefits of employment, past, present, and future.

COUNT V: SUPPLEMENTAL STATE CLAIM AGAINST McKENZIE
FOR DISCRIMINATORY PRACTICES (AIDING AND ABETTING)
<u>IN VIOLATION OF TENNESSEE'S HUMAN RIGHTS ACT</u>

42. This count is an action for damages against McKenzie under the Tennessee Human Rights Act (THRA), § 4-21-101, *et seq.*, *Tennessee Code Annotated*, for aiding and abetting the continued sexual harassment of and retaliation against Plaintiff by Eckhart.

43. Plaintiff incorporates by reference the allegations of paragraphs 11 through 28, above.

44. McKenzie aided and abetted the aforesaid unwanted, sexually hostile and discriminatory and retaliatory actions of Eckhart as aforesaid by intentionally failing to fulfill her responsibilities as office manager by turning a blind eye to the overtly sexually hostile

environment at the Armory Drive facility, by failing to report Eckhart's sexual harassment of and retaliation against Plaintiff to McKenzie's superiors, and otherwise by McKenzie's failure to ensure that remedial action was taken to stop the sexual harassment of and retaliation against Plaintiff by Eckhart..  Such aiding and abetting prevented Coutrywide from taking remedial measures to correct these conditions, and consequently constitute discriminatory practices in violation of § 4-21-301(2), *Tennessee Code Annotated*.

45. As a direct, proximate result of the aforesaid discriminatory practices, Plaintiff has suffered and will continue to suffer extreme mental anguish and embarrassment and medical expenses for the treatment thereof, as well as lost wages and other benefits of employment, past, present, and future.

### COUNT VI:  SUPPLEMENTAL STATE CLAIM AGAINST ECKHART AND COUNTRYWIDE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46. This count is an action for damages against Eckhart for intentional infliction of emotional distress upon Plaintiff, and against Countrywide under the doctrine of *respondeat superior*.

47. Plaintiff incorporates by reference the allegations of paragraphs 1 through 28, above.

48. The actions of Eckhart as aforesaid were intentional and were so outrageous that persons in civilized society should not be expected to tolerate them.

49. The actions of Eckhart as aforesaid were committed during the course of and within the scope of his employment.

50. Because of the previous allegations of sexual harassment against Eckhart, Countrywide knew or should have known of his propensity to engage in such behavior.

51. As a direct, proximate result of the outrageous behavior of Butler as aforesaid, Plaintiff suffered severe emotional injury.

### Prayer for Relief

WHEREFORE the Plaintiff prays for entry of judgment of and from the defendants, jointly and severally and to the extent permitted by law, for compensatory damages in the amount of $2,000,000.00 and punitive damages in the amount of $4,000,000.00, together with her reasonable attorney's fees (except those associated with Count VI), and the costs of this action.

### Jury Demand

Plaintiff demands trial by jury.

Respectfully submitted,

**MacPherson & Youmans, P.C.**

s/ Robert D. MacPherson
by Robert D. MacPherson, BPR #022516
MacPherson & Youmans, P.C.
119 Public Square
Lebanon, Tennessee 37087
Telephone: (615) 444-2300
email *rdmacpherson@macyolaw.com*
Attorney for Plaintiff